**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

WILLIAM HAMMOND,
            *Plaintiff-Appellant,*

v.

KENNETH S. APFEL, COMMISSIONER OF
SOCIAL SECURITY,
            *Defendant-Appellee.*

No. 00-1067

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Marvin J. Garbis, District Judge.
(CA-99-855-MJG)

Argued: December 8, 2000

Decided: February 1, 2001

Before NIEMEYER and MOTZ, Circuit Judges, and
James C. CACHERIS, Senior United States District Judge
for the Eastern District of Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

### COUNSEL

**ARGUED:** Stephan F. Shea, WILLONER, CALABRESE &
ROSEN, P.A., College Park, Maryland, for Appellant. Mark Jacob
Goldberg, Office of the General Counsel, SOCIAL SECURITY
ADMINISTRATION, Baltimore, Maryland, for Appellee. **ON
BRIEF:** Lynne A. Battaglia, United States Attorney, Allen F. Loucks,

Assistant United States Attorney, Baltimore, Maryland; Arthur J. Fried, General Counsel, Charlotte J. Hardnett, Principal Deputy General Counsel, John M. Sacchetti, Associate General Counsel, Litigation Division, Frieda Schleymeyer Colfelt, Litigation Attorney, Office of the General Counsel, SOCIAL SECURITY ADMINISTRATION, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

William Hammond appeals from a judgment of the district court denying a remand to the Secretary of Health and Human Services for consideration of additional evidence and upholding the determination of the Commissioner of Social Security that he was ineligible for disability insurance benefits. For the following reasons, we affirm.

I.

Hammond injured his back in a work-related accident on April 5, 1990. He traces the onset of his disability to that accident. Hammond was treated by Dr. Phillip L. Schneider, an orthopedist, from April 12, 1990 until November 1993. He was also examined and treated by several other doctors between 1993 and 1995 for his back condition. He underwent back surgery in February 1992, but his symptoms of pain persisted. He has been diagnosed with severe spinal stenosis, chronic degenerative disc disease, and disc bulging. Hammond also complained of urinary retention and frequency problems to Dr. Schneider and Dr. Allan H. Macht. The physicians recorded his subjective complaints in their reports and recommended that he visit a urologist. According to the reports, Hammond informed the doctors that he could not afford to see a urologist because he did not have insurance.

Hammond applied for disability insurance benefits pursuant to Title II of the Social Security Act, claiming he was totally disabled due to back pain, lumbar surgery, depression and obesity. He was initially denied benefits. After he requested reconsideration and his claim was again denied, he requested a hearing before an Administrative Law Judge (ALJ).

At the hearing, Hammond testified about his urinary frequency and back-related problems. After considering Hammond's subjective evidence and medical evidence from several physicians covering the period from the accident to the date last insured, December, 31, 1995, the ALJ determined that Hammond was not disabled. The ALJ concluded that Hammond had severe back and leg pain, obesity, and status post-laminectomy, but he did not have an impairment listed in the regulations. He also concluded that Hammond's urinary frequency was not a severe impairment. The ALJ reviewed Hammond's subjective pain complaints and determined that the degree of pain alleged was not supported by the medical evidence and his complaints were not fully credible. The ALJ also determined that Hammond could perform the full range of sedentary work reduced by limitations to sit or stand at his option and lift or carry up to 10 pounds. Finally, the ALJ concluded that Hammond could not perform his past relevant work, but that he was capable of performing certain sedentary, unskilled occupations suggested by the vocational expert. On June 7, 1997, Hammond filed a request for review of the decision with the Appeals Council. The request was denied on January 26, 1999. The decision of the ALJ became the final decision of the Commissioner. While the request for review was pending before the Appeals Council, Hammond began treatment with Dr. Ronald F. Tutrone, a board certified urologist. The treatment covered the period from September 29, 1997 to April 21, 1999. Dr. Tutrone reported that Hammond had a small capacity, neurogenic bladder, which caused his urge incontinence and frequency. Dr. Tutrone further reported that his condition did not improve with medication, and that Mr. Hammond was a candidate for a sacral nerve stimulation. In addition, Dr. Daniel D. Dietrick, a urologist who evaluated Hammond once in 1998 and once in 1999, reported that the urinary condition was entirely related to Hammond's back injury.

Hammond filed a civil action in district court. In addition to challenging the final administrative decision, he requested a remand for

a new hearing to consider the recently obtained urologist reports. The district court denied the request for a remand and held that substantial evidence supported the ALJ's findings. This appeal followed.

Hammond claims that the district court erred in denying a remand because the additional evidence meets the prerequisites for remand. He claims further that the ALJ's finding that his urinary frequency was not a severe impairment is not supported by substantial evidence. He also claims that the ALJ failed to consider all of the testimony of the vocational expert. Finally, he claims that the ALJ improperly assessed his credibility.

## II.

Hammond claims that the additional evidence he submitted to the magistrate judge warranted a remand to the Secretary of Health and Human Services for a new hearing. In an action to review denial of social security disability benefits, a reviewing court may remand a case to the Secretary if three prerequisites are met: (1) the evidence must be new; (2) it must be material; and (3) there must be "good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985). We are satisfied that the evidence is new and material but unpersuaded that "good cause" has been shown.

Hammond complained of urinary retention and frequency to at least two physicians who treated and examined him after his accident and before the date last insured. He also asserted severe urinary frequency during the administrative hearing in February 1997. Despite recommendations from his doctors, he did not visit a urologist until September 1997. Hammond claims that he was unable to afford to see a urologist earlier because he was not insured until then. While we agree that an inability to afford treatment may not be held against a claimant, *see Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984), Hammond has not explained, and the record is void of any reason, why he could suddenly afford treatment in September 1997 but not earlier. At oral argument, Hammond's counsel stated that workman's compensation insurance covered the urologist visits. Nevertheless, he could not explain why, if the work-related accident occurred in 1990, the workman's compensation insurance did not begin until 1997.

Hammond bore the burden of demonstrating objective evidence of his disability. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). Despite the fact that he was aware of his urinary problems as early as November 1993, he did not pursue the seemingly available insurance until at least four years after his urinary problems began. Without any explanation as to why his workman's compensation would not cover treatment earlier, we find that Hammond has failed to demonstrate "good cause" to excuse his failure to submit the urologists' reports.

## III.

Having determined that the additional evidence may not be considered, we must determine whether substantial evidence supports the findings of the ALJ. Under the Social Security Act, we must uphold the factual findings of the ALJ if they are supported by substantial evidence in the record and were reached through application of the correct legal standard. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). In reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the ALJ)." *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987). The issue before the Court, therefore, is not whether Hammond is disabled, but whether the ALJ's findings are supported by substantial evidence and were reached based upon a correct application of the relevant law. *See Coffman*, 829 F.2d at 517.

Hammond first claims that the ALJ's determination that his urinary frequency was not a severe impairment was not based on substantial evidence. The evidence from the urologists may not be considered for purposes of review. *See Smith v. Chater*, 99 F.3d 635, 638 n.5 (4th Cir. 1996). Therefore, the only supporting evidence before the ALJ was Hammond's testimony at the administrative hearing about his urinary frequency and the statements by Dr. Macht and Dr. Schneider. Those statements, however, merely documented Hammond's subjective complaints and recommended that he see a urologist. They were not supported by objective medical evidence. Moreover, Dr. Mondino's report of December 14, 1995, which was well after Ham-

mond's last visits with Dr. Schneider and Dr. Macht, did not mention any urinary problems. Accordingly, we find that there was substantial evidence to support the determination that Hammond's urinary frequency problem did not significantly limit his physical or mental ability to do basic work activity.

Hammond next claims that the ALJ improperly disregarded statements made by the Vocational Expert (VE). Once the ALJ determined that Hammond could not perform his past relevant work as a bus driver, transit police officer and medical courier, the ALJ bore the burden of establishing that a significant number of jobs are available in the national economy that he could perform. *See* 20 C.F.R. § 404.1520(f). The ALJ asked the VE what jobs an individual with Hammond's conditions and limitations could perform. The VE identified several sedentary jobs including security monitor guard, cashier in a self-service gas station, and vehicle dispatcher. Hammond's attorney then asked if a person who had to urinate 20-25 times a day could adequately perform those jobs. The VE responded that the additional restriction would have a significant impact or even preclude the available employment. Hammond claims that the ALJ erred in disregarding the VE's response to his attorney's question. We disagree.

The restrictive hypothetical was based on medical evidence that was not before the ALJ. With no objective evidence to support allegations of such frequent urination, the ALJ did not need to consider it. *See Copeland v. Bowen*, 861 F.2d 536, 540-41 (9th Cir. 1988). Based on an evaluation of the evidence, the ALJ was free to accept or reject restrictive hypothetical questions. *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1987). We find that the ALJ did not err in disregarding the VE's response to counsel's hypothetical and that substantial evidence supported the ALJ's conclusion that Hammond was qualified for the sedentary work described by the VE.

Finally, Hammond contends that the ALJ improperly assessed his credibility and incorrectly evaluated his subjective complaints of pain. An ALJ evaluates the "intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." See *Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996). The ALJ should consider the objective medical evidence of pain, medical treatments taken to alleviate the pain, specific descriptions of pain, and the

claimant's daily activities. *See* 20 C.F.R. §§ 404.1529(c) and 416.929(c). Here, the ALJ found that Hammond "does suffer from some discomfort, but that his symptoms are not credible to the extent that they would be inconsistent with his ability to perform a wide range of sedentary work described." Several physicians reported that Hammond had residual function capacity. Moreover, Hammond testified that he could perform certain work if permitted to stand or sit and that he could perform some household chores. We find that the ALJ's conclusion was supported by substantial evidence.

We also reject Hammond's contention that the ALJ's method of evaluating his credibility was erroneous as a matter of law. The ALJ applied the correct legal standards in determining that Hammond's subjective complaints were inconsistent with his ability to perform a wide range of sedentary jobs.

*AFFIRMED*